**Jack GREEN, Individually and as Trustee; Lawrence P. Belden, Trustee; Stanley Simon, Trustee,**

**v.**

**FUND ASSET MANAGEMENT, L.P.; Merrill Lynch Asset Management, L.P.; Merrill Lynch & Co., Inc.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; Princeton Services, Inc.; Arthur Zeikel; Terry K. Glenn; Munienhanced Fund, Inc.; Munivest Fund II, Inc.; MuniYield Fund, Inc.; MuniYield Insured Fund, Inc.; MuniYield Insured Fund II, Inc.; MuniYield Quality Fund, Inc.; MuniYield Quality Fund II, Inc., Jack Green, Lawrence P. Belden, Stanley Simon, Appellants.**

No. 01–2736.

United States Court of Appeals, Third Circuit.

Argued March 4, 2002.

April 18, 2002.

Laurence M. Johnson (Argued), Davis, Malm & D'Agostine, Boston, MA, Robert E. Sullivan, Sullivan, Weinstein & McQuay, Boston, MA, Bruce I. Goldstein, Alberto G. Santos, Saiber, Schlesinger, Satz and Goldstein, Newark, NJ, Attorneys for Appellants.

Mark Holland (Argued), James N. Benedict, Sean M. Murphy, Mary K. Dulka, C. Neil Gray, New York, NY, Paul A. Rowe, Alan S. Naar, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, LLP, Woodbridge, NJ, Attorneys for Appellees, Fund Asset Management, L.P., Merrill Lynch Asset Management, L.P., Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Princeton Services, Inc., Arthur Zeikel, and Terry K. Glenn.

Robert J. Del Tufo (Argued), Frank E. Derby, Skadden, Arps, Slate, Meagher & Flom LLP, Newark, NJ, Attorneys for Appellees, MuniEnhanced Fund, Inc., MuniVest Fund II, Inc., MuniYield Fund, Inc., MuniYield Insured Fund, Inc., MuniYield Insured Fund II, Inc., MuniYield Quality Fund, Inc., MuniYield Quality Fund II, Inc.

Before SCIRICA and ROSENN, Circuit Judges, and WARD, District Judge.*

## OPINION OF THE COURT

WARD, District Judge.

This is an appeal from the district court's grant of summary judgment for defendants on claims that investment advisors to municipal bond funds breached their fiduciary duties under § 36(b) of the Investment Company Act of 1940 ("ICA") and state law. Because we conclude that plaintiffs have failed to allege any conduct constituting a breach of fiduciary duty by the investment advisors, we affirm the judgment of the district court.

## I. Background [1]

Plaintiffs, shareholders in seven closed-end, publicly-traded municipal investment funds (the "Funds"), brought suit against the Funds and their investment advisors, Fund Asset Management, L.P. ("FAM") and Merrill Lynch Asset Management, L.P. ("MLAM"), claiming that defendants had violated their fiduciary duties under the ICA and state law.

The Funds at issue invest in long-term, tax-exempt municipal bonds. In order to increase the overall yield to shareholders, the Funds' advisors seek to maximize the number of high-yield, long-term bonds in the Funds' portfolios through the use of leverage. The advisors raise capital to buy additional long-term bonds by selling

---

\* The Honorable Robert J. Ward, United States District Judge for the Southern District of New York, sitting by designation.

1. Because the factual background and procedural history of this case have been set forth in great detail in three previous opinions, *see* *Green v. Fund Asset Mgmt.*, 19 F.Supp.2d 227 (D.N.J.1998) ("*Green I*"); 245 F.3d 214 (3d Cir.2001) ("*Green II*"); 147 F.Supp.2d 318 (D.N.J.2001) ("*Green III*"), only those facts necessary to the disposition of the instant appeal are set forth here.

shares of preferred stock. Investors who buy preferred stock receive tax-exempt monthly dividends based on short-term interest rates, typically two and one-half to four percent. Because the long-term investments purchased by the Funds with the proceeds from the sale of preferred shares normally pay higher rates of return than the Funds are obligated to pay to preferred shareholders, the yield to common shareholders is increased. All of the tasks associated with the sale of preferred stock as well as the overall management of the Funds are handled by FAM and MLAM. For their services, FAM and MLAM receive an advisory fee of one-half of one percent of the Funds' average weekly net assets.

Plaintiffs here do not allege that the advisors' compensation was excessive; rather, they allege that because the bonds purchased with the proceeds from the sale of preferred shares are included in the corpus of assets upon which the advisory fee is based, FAM and MLAM have a strong financial incentive to keep the Funds fully leveraged. This incentive, they maintain, creates an actual conflict of interest between the Funds and their advisors that amounts to a *per se* breach of fiduciary duty under § 36(b). Secondly, plaintiffs allege that the advisors' failure to disclose this conflict of interest adequately in the Funds' prospectuses is a separate actionable breach of fiduciary duty.

Defendants moved for summary judgment on plaintiffs' § 36(b) claims,[2] contending that a potential conflict of interest

in the calculation of fees does not amount to an actionable breach of fiduciary duty under § 36(b) of the ICA and that the method of calculating advisory fees was fully disclosed in the Funds' prospectuses. The district court granted defendants' motion for summary judgment on June 5, 2001, holding that (1) plaintiffs' claims against the Funds' officers were not cognizable under § 36(b) because the officers were not the recipients of the advisory fees;[3] (2) the disclosure of the fee arrangement in the Funds' prospectuses was "nose-face plain;" and (3) the conflict of interest inherent in the fee structure did not constitute a *per se* breach of fiduciary duty by the Funds' advisors. *See Green III*, 147 F.Supp.2d 318 (D.N.J.2001). Because the court determined that, even if true, plaintiffs' allegations did not establish a violation of § 36(b), the court entered summary judgment for defendants. This appeal followed.

## II. Discussion

We review the district court's decision *de novo*. *Schnall v. Amboy Nat'l. Bank*, 279 F.3d 205, 208 (3d Cir.2002). Our initial task is to determine whether the district court erred in ruling that a fee arrangement in which a fund's investment advisors have an incentive to maximize leverage in order to increase their advisory fees is not a *per se* breach of an investment advisor's fiduciary duties under § 36(b) of the ICA. We conclude that the legislative history and the text of § 36(b) make clear that potential conflicts of inter-

**2.** Plaintiffs' original complaint asserted claims under §§ 8(e), 34(b), and 36(a) as well as § 36(b) of the ICA and state law. On February 23, 1998, the §§ 8(e), 34(b), and 36(a) claims were dismissed. Plaintiffs then filed an amended complaint, and defendants moved for judgment on the pleadings on the grounds that the state law claims were preempted by federal law. The district court granted defendants' motion, but the decision

was reversed by this Court in *Green II*, 245 F.3d 214 (3d Cir.2001), and the state law claims reinstated. Defendants subsequently filed the motion for summary judgment that is the subject of this appeal.

**3.** Plaintiffs have not appealed from the portion of the judgment dismissing the claims against the Funds' officers.

est in mutual fund fee arrangements are not *per se* violations of investment advisors' fiduciary duties: an actual breach must be alleged and proven.

Section 36(b) of the ICA provides that investment company advisors owe shareholders in investment companies a fiduciary duty with respect to determining and receiving their advisory fees. 15 U.S.C. § 80a-35(b) (1997). The legislative history of the section indicates that Congress recognized the conflicts of interest inherent in mutual fund fee arrangements—indeed, this was the impetus for enacting § 36(b). The Senate Report accompanying § 36(b) noted that "[s]ince a typical fund is organized by its investment adviser which provides it with almost all management services and because its shares are bought by investors who rely on that service, a mutual fund cannot, as a practical matter, sever its relationship with the adviser." S. REP. No. 91–184 (1969), *reprinted in* 1970 U.S.S.C.A.N. 4897, 4901. The report also stated that "in view of the *potential conflicts of interest* involved in the setting of these fees, there should be effective means for the courts to act where mutual fund shareholders or the SEC believe there *has been a breach* of fiduciary duty." *Id.* at 4898 (emphasis added). Section 36(b), Congress believed, "provides an effective method whereby the courts can determine *whether* there has been a breach of this duty by the adviser." *Id.* (emphasis added.)

The text of § 36(b) lends further support to the district court's conclusion that § 36(b) was intended to provide a very specific, narrow federal remedy that is more limited than the common law doctrines on which plaintiffs primarily rely. *See Green III*, 147 F.Supp.2d at 329 (citing *Verkouteren v. Blackrock Fin. Mgmt., Inc.*, 37 F.Supp.2d 256, 261 (S.D.N.Y. 1999)); *see also* S. REP. No. 91–184 (1969), *reprinted in* 1970 U.S.S.C.A.N. 4897, 4898

& 4903 ("[T]he unique structure of mutual funds has made it difficult for the courts to apply traditional fiduciary duty standards in considering questions concerning management fees," and § 36(b) was designed "to provide a means by which the Federal courts can effectively enforce the *federally-created fiduciary duty* with respect to management compensation.") (emphasis added).

The fact that the fiduciary duty imposed by § 36(b) is significantly more circumscribed than common law fiduciary duty doctrines is demonstrated by § 36(b)'s limitations on recovery: under § 36(b), a shareholder may only sue the recipient of the fees; recovery is limited to *actual* damages resulting from the breach; and damages are not recoverable for any period prior to one year before the action was instituted, in this case before June 21, 1995. 15 U.S.C. § 80a-35(b)(3). Further, the plaintiff has the burden of proving a breach of fiduciary duty, *id.* at S 80a-35(b)(1), in contrast with the common law rule that requires a fiduciary to justify its conduct. *See, e.g., Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F.Supp. 1038, 1044 n. 6 (S.D.N.Y.1981), aff'd, 694 F.2d 923 (2d Cir.1982) ("At common law it was incumbent on the fiduciary to justify his transaction with his cestui. Under this statute[§ 36(b) ] the burden is reversed.").

In addition, the independent directors of the Funds testified that they were fully aware that fees were to be paid on assets acquired through leverage and that they reviewed and approved the advisory fee agreements each year. (Swensrud Tr. at 117; West Tr. at 101–02.) The district court took this into account, as Congress directed; according to § 36(b), approval of the management fee by the directors "shall be given such consideration by the court as is deemed appropriate under all the circumstances." 15 U.S.C. § 80a-35(b)(2); *see Green III* at 332.

Our interpretation of both the text and legislative history of § 36(b) mandates that plaintiffs allege and prove an actual breach of fiduciary duty in order to prevail on their claims. Because plaintiffs have not pointed to any instance during the period for which they can recover damages [4] when the advisors improperly failed to de-leverage the Funds in order to maximize their fees and because plaintiffs have not alleged any actual damages they or the Funds suffered as a result of any improper decision by the Funds' investment advisors, they do not have a cognizable claim under § 36(b). *Accord Krantz v. Prudential Invs. Fund Mgmt. LLC,* 77 F.Supp.2d 559, 563–65 (D.N.J.1999) (holding that where plaintiff did not allege any injury resulting from the approval of investment advisory agreements by fund directors who were allegedly "interested" in the fund's advisor, plaintiff's "conclusion that a fiduciary breach [under § 36(b)] necessarily flows from the invalid [a]greements must therefore fail.").

 Likewise, we conclude that the district court was correct in ruling that defendants adequately disclosed the method by which advisory fees would be calculated. First, the fact that advisory fees would be calculated based on the total assets of the Funds, including assets acquired through the use of leverage, was fully disclosed in the Funds' prospectuses: the definition of "average weekly net assets" makes perfectly plain that *all* assets of the fund, including those bonds purchased with the proceeds of preferred stock sales, are taken into account in calculating the advisory fee. Each prospectus states that the advisors will receive a monthly advisory fee of one-half of one percent of the fund's "average weekly net assets." MuniEnhanced Fund Prospectus at 20.[5] "Average weekly net assets" is defined as "the average weekly value of the *total* assets of the Fund, minus the sum of accrued liabilities of the Fund and accumulated dividends on the shares of preferred stock." *Id.* (emphasis added). Indeed, lead plaintiff Jack Green testified at his deposition that he became aware of the conflict of interest that led him to bring the instant lawsuit by reading the prospectuses. (Green Tr. at 58–59.) If Mr. Green was able to correctly ascertain the method by which the fees would be calculated from public filings, the logical conclusion is that the method was adequately disclosed. Therefore, because the information needed to determine the method of calculating advisory fees was clearly available to and understood by shareholders, the district court properly dismissed plaintiffs' claim that defendants failed adequately to disclose the basis of their fees.

## III. Conclusion

Because we find that plaintiffs have failed to present sufficient evidence to create a genuine issue of material fact regarding whether the Funds' investment advisors breached their fiduciary duties under § 36(b) of the ICA, we affirm the judgment of the district court.

---

**4.** Plaintiffs claim the advisors made an incorrect leveraging decision during the period extending from fourth quarter 1993 to first quarter 1995; however, plaintiffs concede that they cannot recover damages for this period. The statute prohibits recovery of damages for any period prior to one year before the action was instituted. Since this action was filed on June 21, 1996, plaintiffs cannot recover damages for any breach occurring before June 21, 1995. Moreover, plaintiffs did not invest in the Funds until May 1995.

**5.** The prospectuses for the six other funds contain identical disclosures.